# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

**JESSICA MARIE SPEARS**                                              **PLAINTIFF**

**v.**                                                **CIVIL ACTION NO. 1:22-cv-173-JMV**

**COMMISSIONER OF**
**SOCIAL SECURITY**                                                **DEFENDANT**

## ORDER

This matter is before the court on Plaintiff's complaint [1] for judicial review[1] of the Commissioner of the Social Security Administration's denial of an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The undersigned held a hearing on July 18, 2023 [20]. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. Having considered the record, the administrative transcript, the briefs

---

[1] The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

of the parties, the oral arguments of counsel and the applicable law, the undersigned finds the Commissioner's decision is supported by substantial evidence and that said decision should be affirmed.

**Statement of the Case**

On October 6, 2020, Plaintiff filed for DIB under Title II of the Social Security Act and SSI under Title XVI, alleging a disability onset date of October 28, 2017. Tr. at 13. The applications were denied initially on January 22, 2021, and upon reconsideration on July 13, 2021. Tr. at 13. Plaintiff filed a timely request for a hearing. The Administrative Law Judge ("ALJ") held a telephonic hearing on January 13, 2022, and issued an unfavorable decision in this cause on April 26, 2022. Tr. at 10, 13-29. The Appeals Council denied Plaintiff's request for review on September 30, 2022, thereby making the ALJ's decision the final decision of the Commissioner and the Social Security Administration for purposes of judicial review under the Social Security Act. Tr. at 2-4.

The ALJ evaluated Plaintiff's claims pursuant to the five-step sequential evaluation process. As a preliminary matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. Tr. at 15, Finding 1. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of October 28, 2017. Tr. at 15, Finding 2. At step two, the ALJ found that the Plaintiff had the following "severe" impairments: scoliosis and degenerative disc disease of the spine (20 CFR 404.1520(c) and 416.920(c)). Tr. at 15, Finding 3. At step three, the ALJ found that none of Plaintiff's impairments, either alone or in combination, met or equaled the criteria of an impairment at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings). Tr. at 19, Finding 4.

The ALJ then assessed Plaintiff's RFC and found that she has the ability to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), except she should only occasionally climb, balance, stoop, kneel, crouch, or crawl. Tr. at 20-28, Finding 5.

At step four, the ALJ found that Plaintiff is able to perform her past relevant work as a dispatcher (DOT number 379.362-010). Tr. at 28, Finding 6.

Because the ALJ found that Plaintiff was able to perform her past work, the ALJ did not consider step five. Accordingly, the ALJ found Plaintiff not disabled and denied her application for period of disability and DIB as well as SSI. Tr. at 29, Finding 7.

## Issue on Appeal

In her brief on appeal, Plaintiff's counsel argues that the ALJ failed to consider whether Plaintiff was disabled for any consecutive 12-month period, a period of "closed disability", prior to her spinal reconstruction surgery, which she concedes improved her condition. *See Moreland v. Astrue*, 2009 U.S. Dist. LEXIS 92119, at *5 (N.D. Miss. 2009) ("It is the policy of [SSA] to establish a closed period of disability where the evidence establishes that a plaintiff was unable to engage in substantial gainful activity for a continuous period of 12 months, but the claimant is no longer disabled by the time a disability determination is made."). More specifically, Plaintiff contends that the ALJ's RFC of Plaintiff focuses on the improved condition of Plaintiff post-surgery rather than assessing Plaintiff's RFC prior to the surgery when she was "more limited." In support of this, Plaintiff points to her reports of severe pain and weakness in her neck, back, and arms; limited range of motion; tenderness to palpation; and imaging demonstrating a progressive degeneration of her entire spine.

Plaintiff points to the following from the record: an ER visit in October 2017; a separate ER visit following the automobile accident in October 2017; emergency treatment after a second

motor vehicle accident in April 2018; a July 2019 doctor's visit; a November 2020 doctor's visit; a December 2020 doctor's visit; a February 2021 neurosurgical evaluation; and a March 15, 2021, doctor's visit. Pl.'s Br. at 5-9 (citing Tr. at 382, 386-87, 483, 485, 493, 525, 528, 530, 536, 805-06, 808, 897-99, 901-03, 966, 1021, 1026, 1031-32, 1034, 1082-83, 1087). Throughout these, Plaintiff contends that the symptoms and assessment of her physical condition were more severe than reflected in the ALJ's RFC determination.

Plaintiff also relies on the April 5, 2021, opinion of her treating neurosurgeon Dr. Menger in the form of a medical source statement, wherein Dr. Menger described her impairments as having lasted at least 12 months and would cause her to be absent from work, on average, more than 4 days per month. This level of absence from work would necessitate a finding of disability.

In response, the Commissioner argues that for the period from January 2019 through September 2020, the plaintiff was not eligible for either DIB or SSI. Plaintiff's DIB eligibility ended when her insured status expired December 31, 2018. *See Torres v. Shalala*, 48 F.3d 887, 894 n.12 (5th Cir. 1995) (evidence after expiration of Title II disability insured status is not relevant to Title II disability analysis); *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985) (impairment that had its onset or became disabling after expiration of insured status cannot serve as a basis for finding of disability). Meanwhile, for SSI benefits, claimants are ineligible for benefits for any month prior to the month after they applied for benefits. 20 C.F.R. § 416.335. Thus, the Commissioner contends that Plaintiff, having applied for SSI in October 2020, would not be eligible for SSI benefits until October 2020.

With respect to the alleged DIB eligible period, the Commissioner argues that "Plaintiff had no documented issues with ambulation, and her primary medical issues involved recovering

4

from injuries sustained in car accidents." Def.'s Br. at 5 (citing Tr. at 350, 375, 519, 536).

Similarly, in the interim period of alleged DIB and SSI ineligibility, the Commissioner contends that "Plaintiff's treatment…does not document ongoing limitations that would interfere with sedentary work." Def.'s Br. at 5. Of relevance, Commissioner points to a July 2019 examination for a complaint of back pain where normal stability and muscle strength were noted. Tr. at 806. Separately, at an August 2019 physical exam, "Plaintiff had normal range of motion, normal strength, normal sensation and motor function, and normal gait." Tr. at 753.

After the application for SSI benefits in October 2020 and prior to the May 2021 spinal surgery, the Commissioner notes that the record reflects "no strength or neurological deficits." Def.'s Br. at 6 (citing Tr. at 29-30, 897-902, 963-64, 967-68, 1022, 1032). Finally, the Commissioner points to the ALJ's specific conclusion that there is no 12-month period in which the plaintiff was unable to perform sedentary work. Tr. at 33.

As to Dr. Menger, the Commissioner argues that much of Dr. Menger's opinions regarding Plaintiff is consistent with being able to perform sedentary work. For instance, Dr. Menger found Plaintiff could occasionally lift and carry up to 10 pounds, stand and walk up to 2 hours per workday, sit unaffected by impairment, and frequently perform postural activities such as balancing, stooping, or crouching. Tr. at 945-46. And even though Dr. Menger opined that Plaintiff would need to miss more than 4 days of work per month, the Commissioner points out that the ALJ found Dr. Menger's April 2021 opinions only "somewhat persuasive" and specifically questioned support for the opinion on how much work Plaintiff would miss in a given month. Tr. at 34.

**Discussion**

In this case, the ALJ, as noted by the Commissioner, expressly stated that "the evidence does not support any period of twelve months in which she has been unable to stand and walk two hours in an eight-hour workday, lift up to ten pounds, lift and carry articles such as docket files, ledgers, and small tools, or in which she was unable to perform the sitting, pushing and pulling required in sedentary work." Tr. at 33. The plaintiff has argued that the ALJ's analysis and RFC are "static," which evinces that the ALJ did not, in fact, consider whether there was any 12-month period between October 2017 and April 2022 wherein Plaintiff was disabled. However, the ALJ's opinion showcases the opposite. In Finding 5, the ALJ sorted through Plaintiff's medical history chronologically.

On an October 3, 2017, examination, the ALJ noted "the claimant had normal range of motion during a musculoskeletal exam…neurological exam was normal, including with regard to gait." Tr. at 28 (citing Exhibit 7F). Following the October car accident, a UMMC exam was performed on October 23, 2017, in which "claimant was able to move all of her extremities…She was also able to move her neck from left to right and reported pain when doing so. She had good upper and lower extremity function, no midline tenderness to palpation of the spine, and steady gait with normal straight leg raise test… [and a] radiologic study of the claimant's cervical spine showed mild to moderate multilevel degenerative changes…." Tr. at 28-29 (citing Exhibits 7F and 8F).

The ALJ's opinion continues in this fashion through various exams ranging from the October examinations discussed above through the spinal surgery in May 2021 as well as treatment beyond the surgery, including a physical therapy session in January 2022. Tr. at 29-33. Included among those observations are that the plaintiff was "described as doing well … and an exam indicated her neck was non-tender and that she had only mild upper thoracic spine

6

tenderness" following an April 2018 automobile accident. Tr. at 29 (citing Exhibits 1F and 2F). In July 2019, Plaintiff had painful range of motion, but also stability and muscle strength were normal. Tr. at 29 (citing Exhibit 11F). In August 2019, just one month later, Plaintiff "exhibited normal range of motion, strength, and gait." Tr. at 29 (citing Exhibit 9F).

Of importance for this appeal, the ALJ noted the following in reviewing the medical record from a period of worsening condition beginning in 2020:

> Thus, the record shows some worsening in spinal symptoms in late 2020 after a period in which she had relatively conservative treatment. The claimant had positive straight leg raise bilaterally, as well as a noted high left shoulder and altered gait in February and April 2021, and she underwent posterior thoracolumbar fusion and instrumentation with posterior column osteotomy in May 2021 (Exhibits 21F and 22F). The claimant was noted to be walking with a walker in June 2021, but she was described as doing well. She began physical therapy, and by September 10, 2021, the claimant stated she had been able to ambulate more often without her walker, but she noted she continued to use if when in public due to fatigue and pain, after July 2021 USA Neurology notes indicated "significant improvement" after surgery and full extremity strength with improved posture (Exhibits 22F and 32F).

Tr. at 32.

Even with a period of deteriorated condition – late 2020 – the ALJ found significant improvement within the following year, and as such, there was no 12-month period in which the ALJ found the plaintiff to be disabled, and thus eligible for a period of closed disability. The record on appeal reflects that the ALJ did consider Plaintiff's condition in the entire range from October 2017 to early 2022, contrary to Plaintiff's assertion that the ALJ's opinion reflects only the post-surgery improvements of Plaintiff's health.

As for the opinion of Dr. Menger that Plaintiff would miss more than four days, the Commissioner points out and the undersigned agrees, that the ALJ's opinion reflects that she did not find Dr. Menger's conclusion "fully consistent with exam notes, including his own." In considering the entire record, the ALJ did not find evidence of sustained symptoms of significant

7

enough severity that would require her to miss work to the extent opined by Dr. Menger. Tr. at 34. As required by 20 C.F.R. § 404.1520c, the ALJ did not give controlling weight or defer to the opinion of Dr. Menger, but instead evaluated the persuasiveness of the opinion under the (c)(1)-(5) factors, including supportability and consistency. In determining that the medical evidence and the record as a whole was not consistent with Dr. Menger's finding, as well that Dr. Menger's own objective medical evidence did not support his conclusion, the ALJ was performing her role correctly under the regulations, and it is not the place of the undersigned to re-weigh the evidence to question the ALJ's judgment.

## Conclusion

For the reasons stated above, the Court finds that the ALJ's April 26, 2022, decision is affirmed.

**SO ORDERED** this, the 21st day of July, 2023.

/s/ Jane M. Virden
United States Magistrate Judge